IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

—————————————————              :
                                                              :
THOMAS LOEPER, JR., on behalf of           :
himself and others similarly situated,           :    Civ. Action No. 3:22-cv-2044-MEM
                                            Plaintiff,    :
                      v.                                     :
                                                              :
WEGMANS FOOD MARKETS, INC.,            :
                                         Defendant.    :
—————————————————              :

**PLAINTIFF'S BRIEF IN SUPPORT OF**
**UNOPPOSED MOTION FOR "PRELIMINARY APPROVAL"**
**OF CLASS ACTION SETTLEMENT AND OTHER RELATED RELIEF**

# **TABLE OF CONTENTS**

I.   BACKGROUND .................................................................................................2

    A.   Plaintiff's Merits Theory. ......................................................................2

    B.   Damages ..................................................................................................3

    C.   Settlement Discussions............................................................................5

    D.   The Settlement Terms. ............................................................................5

    E.   The Notice and Payment Process. ...........................................................7

    F.   The Release. .............................................................................................9

II.  ARGUMENT.....................................................................................................10

    A.   Preliminary Approval is Warranted .....................................................10

        1.   At the final approval stage, the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)." ............................11

        2.   At the final approval stage, the Court "will likely be able to . . . certify the class for purposes of judgment on the proposal." ...16

    B.   The Notice Form and Protocols Warrant Approval............................22

    C.   Winebrake & Santillo, LLC and Lichten & Liss-Riordan P.C. Should Be Appointed Interim Class Counsel.................................................23

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Pages(s)**

*Altnor v. Preferred Freezer Services, Inc.*
    197 F. Supp. 3d 746 (E.D. Pa. 2016)...................................................................14

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................22

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) .......................................................................... 17, 20

*Davis v. Target Corporation*,
    2023 U.S. Dist. LEXIS 214818 (E.D. Pa. Dec. 1, 2023) .....................................19

*Del Valle v. Empire Home Health Care, Inc.*,
    2021 U.S. Dist. LEXIS 153355 (E.D. Pa. Aug. 3, 2021) ............................. 11, 15

*Devine v. Northeast Treatment Centers, Inc.*,
    2021 U.S. Dist. LEXIS 197924 (E.D. Pa. Oct. 14, 2021)...............................4, 15

*Flores v. Eagle Diner Corp.*,
    2019 U.S. Dist. LEXIS 141743 (E.D. Pa. Aug. 21, 2019)...................................15

*Ford-Green v. NHS, Inc.*,
    106 F. Supp. 3d 590 (E.D. Pa. 2015).....................................................................6

*Galt v. Eagleville Hospital*,
    310 F. Supp. 3d 483 (E.D. Pa. 2018)...................................................................14

*Hall v. Accolade, Inc.*,
    2019 U.S. Dist. LEXIS 143542 (E.D. Pa. Aug. 23, 2019)............... 11, 12, 14, 15

*Heimbach v. Amazon.com, Inc.*,
    255 A.3d 191 (Pa. 2021).........................................................................................3

*In re Baby Products Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ................................................................................13

*In re GMC Pick-Up Truck Fuel Tank Products Liability Litig.*,
   55 F.3d 768 (3d Cir. 1995) ..................................................................10

*In re Janney Montgomery Scott LLC Financial Consultant Litig.*,
   2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009) .....................15

*In re NFL Players Concussion Injury Litig.*,
   821 F.3d 410, 439 (3d Cir. 2016) .......................................................12

*In re NFL Players' Concussion Injury Litig.*,
   961 F. Supp. 2d 708 (E.D. Pa. 2014) ..............................................2, 10

*In re Prudential Insurance Co. America Sales Practice Litig.*,
   148 F.3d 283(3d Cir. 1998) ................................................................21

*In re Wawa Inc. Data Security Litig.*,
   2021 U.S. Dist. LEXIS 142025 (E.D. Pa. July 30, 2021) ...................11

*Lebby v. Walmart*,
   No. 21-cv-01365 (M.D. Pa. Jan. 19, 2023) .........................................11

*Myers v. Jani-King of Philadelphia, Inc.*,
   2019 U.S. Dist. LEXIS 144929 (E.D. Pa. Aug. 26, 2019)...................14

*Ovalle v. Harris Blacktopping, Inc.*,
   2021 U.S. Dist. LEXIS 243826 (E.D. Pa. Dec. 22, 2021) .....................6

*Perez v. Mountaire Farms, Inc.*,
   650 F.3d 350 (4th Cir. 2011) .................................................................4

*Reyes v. Netdeposit, LLC*,
   802 F.3d 469 (3d Cir. 2015) ................................................................17

*Rodriguez v. National City Bank*,
   726 F.3d 372 (3d Cir. 2013) ......................................................... 17, 18

*Roxberry v. Snyders-Lance, Inc.*,
   2017 U.S. Dist. LEXIS 193573 (M.D. Pa. Nov. 15, 2017)..................15

*Smith v. Strom Engineering Corp.*,
   2022 U.S. Dist. LEXIS 84837 (W.D. Pa. May 10, 2022) ....................19

*Solkoff v. Pa. State Univ.*,
   435 F. Supp. 3d 646 (E.D. Pa. 2020) ......................................................................4

*Stewart v. Abraham*,
   275 F.3d 220, 227 (3d Cir. 2001) .........................................................................20

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ............................................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................................... 17, 18

*Weiss v. York Hospital*,
   745 F.2d 786 (3d Cir. 1984) ................................................................................20

**Statutes:**

34 Pa. Code §231.1 ...................................................................................................3

43 P.S. § 333.104(c) .................................................................................................3

**Rules:**

Fed. R. Civ. P. 23 ............................................................................................ *passim*

**Other Authorities:**

William Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg on Class
   Actions* at §4:69 ................................................................................................21

Thomas Loeper, Jr. ("Plaintiff") files this motion seeking ***preliminary*** approval of the settlement of this class action lawsuit, which alleges that Wegmans Food Markets, Inc. ("Wegmans") violated the Pennsylvania Minimum Wage Act ("PMWA") by failing to pay him and other warehouse employees overtime wages to and from *intra*-warehouse time clocks at the beginning and end of the workday (hereafter **"walking time"**) within Wegmans's Pottsville, Pennsylvania Retail Service Center ("RSC").  *See generally* ECF No. 1.  Wegmans denies liability. Yet – like Plaintiff – it has settled to avoid the risk, delay, and expense of continued litigation.

The settlement requires Wegmans to pay $350,000.00 plus any associated employer-side taxes and proposes the following distribution (subject to Court approval): **(i)** $223,334.00 will be paid to the class members; **(ii)** $116,666.00 will be paid to Loeper's lawyers to cover attorney's fees, litigation expenses, settlement administration expenses, and **(iii)** a $10,000 service award will be paid to Loeper. *See* ECF No. 31-1 (Agreement) at pp. 2-3 (defining "Net Settlement Fund").

Now, the settlement must be reviewed for fairness per Civil Rule 23's "two-stage" process, which has been described as follows:

> Review of a proposed class action settlement typically proceeds in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make "a preliminary fairness evaluation."  If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, and opt out of

1

the settlement.  At the second stage, after class members are notified of the settlement, the court holds a formal fairness hearing where class members may object to the settlement.  If the court concludes that the settlement is "fair, reasonable and adequate," the settlement is given final approval.

*In re NFL Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 713-14 (E.D. Pa. 2014) (internal citations omitted).

We currently find ourselves at the initial "preliminary" stage of the approval process.  As discussed herein, preliminary approval is warranted:

## I.    BACKGROUND

### A.    Plaintiff's Merits Theory.

Plaintiff filed his complaint on December 23, 2022, alleging that Wegmans violated the Pennsylvania Minimum Wage Act ("PMWA"). [1]  *See* ECF No. 1. Plaintiff alleges that Wegmans generally paid class members based on the time they punched in and punched out at time clocks located within the RSC.  As a result, Plaintiff contends that he and other class members were not paid for walking time.  Plaintiff asserts that this walking time is compensable under the PMWA.

Plaintiff generally relies on *Heimbach v. Amazon.com, Inc.*, 255 A.3d 191

---

[1]    Plaintiff also asserted a theory that Defendant had violated the FLSA by not including the value of gift cards paid to employees in employees' "regular rate" for purposes of calculating overtime.  Discovery confirmed, however, that defendant terminated this practice outside the maximum three-year limitations period under the FLSA.

2

(Pa. 2021), wherein the Pennsylvania Supreme Court interpreted the PMWA's regulatory definition of compensable "hours worked" (found at 34 Pa. Code §231.1) to include the time Amazon warehouse employees spent in mandatory, post-shift security screenings conducted inside the warehouse. Plaintiff submits that his alleged *intra*-warehouse walking time is legally comparable to the *intra*-warehouse security screenings at issue in *Heimbach*.

If, as Plaintiff asserts, walking time constitutes "hours worked" under the PMWA, then it must be included in employees' total weekly hours in calculating overtime pay. The PMWA requires that employees receive overtime wages "not less than one and one-half times" the employee's regular pay rate for all hours worked over 40 per week. *See* 43 P.S. § 333.104(c). Relying on this provision, Plaintiff seeks unpaid overtime wages for his alleged walking time during weeks in which his paid time equaled at least 40 hours. Wegmans has maintained throughout this litigation that walking time is not compensable.

### B.    Damages

Wegmans produced timekeeping, payroll, badge swipe data for class members. It also produced information related to the location of time clocks within the RSC and the distances between the facility's entrance and the timeclocks, including scaled maps of the facility, video footage of the walkpaths used by class members, and a sworn declaration by a company representative.

3

Based on the time clock location information, class counsel retained industrial engineer Robert G. Radwin, Ph.D. [2] to provide an opinion regarding the approximate time it could take a typical worker to walk between the warehouse's entrance area and each time clock within the warehouse.

Class counsel also retained data analyst Liesl Mae Fox, Ph.D. to estimate the unpaid overtime wages associated with Dr. Radwin's walking time estimates based on the class-wide payroll data provided by Wegmans.  Dr. Fox estimated that if Plaintiff was able to obtain class certification and if a trier of fact agreed with Dr. Radwin's walking time estimates, the proposed class members would be owed roughly $520,000 in overtime wages.  Thus, the $350,000 settlement fund is approximately 67% of Plaintiff's counsel's estimate of the total potential unpaid overtime wages. [3]

Based on Plaintiff's counsel's analysis of payroll, timekeeping, and badge-swipe data, the instant lawsuit covers 1,228 putative class members and 49,933

---

[2]    Dr. Radwin has provided time measurements in many wage and hour class actions. *See*, *e.g.*, *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350 (4th Cir. 2011).

[3]    This gross recovery figure includes attorney's fees. In evaluating a settlement's fairness, "'the relevant settlement amount is the total amount of the settlement even though the total settlement amount includes attorney's fees.'" *Devine v. Northeast Treatment Centers, Inc.*, 2021 WL 4803819, 2021 U.S. Dist. LEXIS 197924, *5 (E.D. Pa. Oct. 14, 2021) (quoting *Solkoff v. Pa. State Univ.*, 435 F. Supp. 3d 646, 655 (E.D. Pa. 2020)).

full-time weeks.[4]  *See* Aaron Decl. at ¶ 3.  Moreover, based on such data,

Plaintiff's lawyers have estimated the ***maximum*** amounts of unpaid overtime

minutes and wages associated with the walking time covered by the instant lawsuit.

### C.    Settlement Discussions.

Following the data exchange and analysis described above, Plaintiff's

counsel provided Defendant with a detailed settlement memorandum, setting forth

Plaintiff's view of the merits of the case and Plaintiff's damages analysis.

Defendant responded in kind with its own detailed memorandum setting forth its

anticipated defenses and its own damages analysis.  Following this exchange,

counsel for the Parties had several conversations and written exchanges regarding

each Parties' analysis of the data, including the number of covered individuals and

workweeks.  After several months, the Parties reached a settlement.

### D.    The Settlement Terms.

The settlement requires Wegmans to make a payment of $350,000, plus any

employer-side payroll taxes associated with payments to settlement class members.

*See* ECF No. 31-1 at ¶ 4.  The settlement fund will be distributed as follows: **(i)**

$223,334.00 will be paid to the class members; **(ii)** $116,666.00 will be paid to

---

[4]      Plaintiff's counsel has provided their analysis to defense counsel for their review.  In the event there are any differences in the parties' analysis of class member eligibility or eligible workweeks, they will work cooperatively to resolve any issues.

Loeper's lawyers to cover attorney's fees, litigation expenses, settlement administration expenses, and **(iii)** a $10,000 service award will be paid to Loeper. *See* ECF No. 31-1 at p. 2-3 (defining "Net Settlement Fund"). If the Court disapproves any portion of the requested attorney's fees/expenses or service award, the disapproved monies will enhance the payments to class members. *See id.* at pp. 3-4 (defining "Payment Amount").

The proposed settlement class is defined as all persons, including Plaintiff, who worked as a non-exempt, hourly associate at Defendant's Pottsville, Pennsylvania RSC and was credited with working over 40 hours[5] at Defendant's Pottsville, PA Retail Service Center ("RSC") (not including leave, vacation, or holiday time) during the following time periods: (i) 12/22/19 until 4/20/20; (ii) 7/4//21 until 12/18/21; and (iii) 2/13/22 until 10/15/23. *See* Agreement, ECF No. 31-1, at pp. 1-2 (defining "Class Members" and "Eligible Weeks").[6] The instant

---

[5]    Limiting this action (as well as the class definition) to weeks where class members were credited with over 40 hours according to Wegmans's payroll records reflects the principle that uncompensated time arising *below* the PMWA's 40-hour overtime threshold is recoverable under the PMWA *only if* the average weekly compensation for all hours worked falls below the $7.25/hour minimum wage. *See Ovalle v. Harris Blacktopping, Inc.*, 2021 WL 6063576, 2021 U.S. Dist. LEXIS 243826, *14-17 (E.D. Pa. Dec. 22, 2021); *Ford-Green v. NHS, Inc.*, 106 F. Supp. 3d 590, 611-13 (E.D. Pa. 2015). Because the hourly wages paid to the warehouse employees far exceed the minimum wage and the allegedly uncompensated security screening time at issue is relatively small, PMWA damages are unavailable during sub-40-hour weeks.

[6]    The definition of Eligible Weeks is limited to these three time periods because discovery has confirmed that during all other periods during the statute of

lawsuit covers **1,228** class members.  *See* Aaron Decl. at ¶ 3.

The settlement provides that each class member employed at Wegmans's RSC will receive $50 *plus* an additional proportionate amount based on the number of Eligible Weeks each Class Member worked.[7]  .  *See* ECF No. 31-1 at pp. 4-5 (defining "Payment Amount").  This payment formula reflects Plaintiff's walking time and damages analysis conducted by Drs. Radwin and Fox.   Under this formula, the average *net* Class Member settlement award is $181.87.  .  *See* Aaron Decl. at ¶ 4.

### E.    The Notice and Payment Process.

If this settlement is preliminarily approved, Analytics Consulting LLC ("the Administrator")[8] will mail to each class member a detailed notice form that describes the litigation and the settlement and is "individualized" to inform each class member of his/her expected Payment Amount and the manner by which such amount was calculated.  *See* ECF No. 31-1 at ¶ 7 & Ex. A (Notice).  In addition, the notice form: explains how class members can exclude themselves from or

---

limitations, the timeclocks used by class members were located at the entrance of the facility.  Therefore, other than the time periods specified as Eligible Weeks, class members were actually paid for walking time within the facility.

[7]     The formula for calculating each class member's proportionate share is: [(Net Settlement Fund *minus* ($50 *multiplied by* the total number of Participating Class Members)) *multiplied by* (total number of individual Participating Class Member's Eligible Weeks *divided by* total Eligible Weeks of all Participating Class Members)].  *See* ECF No. 31-1 at pp. 3-4 (defining "Payment Amount").

[8]     *See generally* https://www.analyticsllc.com/.

object to the settlement; describes the scope of the release; identifies class counsel;
describes the fees/expenses sought by class counsel and the service award sought
by Plaintiff; and informs class members of the time and location of the final
fairness hearing. *See generally id.* at Ex. A. The Administrator is required to
follow detailed procedures to ensure that class member addresses are as accurate
and updated and to re-mail any notice forms that are returned by the Postal Service
as undeliverable. *See* ECF No. 31-1 at ¶ 7.

Other than settlement awards attributable to Class Members who elect to
exclude themselves from the settlement, ***no portion*** of the $350,000 settlement
fund will be returned to Wegmans. *See* Agreement at ¶ 4, pp. 3-4 (defining
Payment Amount).[9] Class members are *not* required to complete a "claim form" or
any other document in order to receive a settlement payment. *See id.* at ¶ 10.
Rather, the Administrator will mail settlement checks to all class members other
than those who affirmatively exclude themselves from the settlement. *See id.* at p.
3 (defining "Participating Class Member"), 10.[10] Any proceeds associated with

---

[9]    Wegmans's retention of settlement awards attributable to "opt outs" is
reasonable because any Class Members who exclude themselves will not be
releasing any claims against Wegmans.

[10]    Because the Administrator will have already vetted the class member
addresses in issuing the notice forms, the class members addresses will be
especially reliable when the Administrator issues the settlement checks.
Notwithstanding, as with the notice forms, the Administrator will follow strict
procedures to ensure that any returned checks are re-mailed to updated addresses.

uncashed checks will be held by the Commonwealth of Pennsylvania as unclaimed property. *See id.* at ¶ 10.

### F.    The Release.

If this settlement is approved, class members who do not exclude themselves from the settlement will be bound by a release that is limited to the instant litigation.  Specifically, class members release "any claims or causes of action arising from December 22, 2019 (three years prior to filing of complaint) to October 15, 2023 which were raised or which are reasonably related to the claims raised in the Action, including but not limited to, all such minimum wage, overtime and other wage and hour claims arising under the Pennsylvania Minimum Wage Act ("PMWA"), the Pennsylvania Wage Payment and Collection Law, or any state, local or other law governing wages, and any related claims for liquidated damages, penalties, attorneys' fees and costs, expenses, and interest for such wages.[11]  Plaintiff will also agree to a general release if the Court approves his requested service award payment.  *See* ECF No. 31-1 at pp. 4-5 (defining "Released Claims" and "Released Parties") and ¶ 6.

---

[11]    All Participating Class Members who endorse and cash a settlement check will also waive all such claims arising under the Fair Labor Standards Act ("FLSA").  In this regard, the reverse-side of each settlement check will bear the following language:  "By endorsing this check, I consent to join this Action and to be bound by the settlement of this Action and the release therein and to have the Plaintiff and Class Counsel represent me pursuant to the FLSA, 29 U.S.C. §216(b)."

## II.    ARGUMENT

The instant settlement represents an excellent outcome for the class members and is the result of arms-length bargaining conducted after substantial discovery and adversarial litigation.  As discussed herein, the Court should preliminarily approve the settlement, endorse the contemplated notice protocols and form, appoint Winebrake & Santillo, LLC ("W&S") and Lichten & Liss-Riordan, P.C. ("LLR") to serve as interim class counsel, and schedule a final fairness hearing:

### A.    Preliminary Approval is Warranted.

Class action settlements must be approved by the Court as fair.  *See* Fed. R. Civ. P. 23(e)(2).[12]  As noted at page 2 *supra*, "preliminary" approval of the settlement results in class members receiving notice of the settlement.  Then, after class members have had an opportunity to object to or exclude themselves from the settlement, the Court will preside over a hearing aimed at determining whether the settlement warrants "final approval."  *See In re NFL*, 961 F. Supp. 2d at 713-14.

Civil Rule 23(e)(1), entitled "Grounds for Decision to Give Notice," addresses the pertinent standard at the preliminary approval stage:

---

[12]    Our Court of Appeals has observed that "[t]he law favors" class action settlements because "substantial judicial resources can be conserved by avoiding formal litigation" and because parties "gain significantly from avoiding the costs and risks of a lengthy and complex trial."  *In re GMC Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

(e)  Settlement, Voluntary Dismissal, or Compromise.  The claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval.  The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) *Notice to the Class.*

(A)  *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

(B)  *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1); *see*, *e.g.*, *Lebby v. Walmart*, No. 21-cv-01365 (M.D. Pa. Jan. 19, 2023) (attached as Ex. 1); *Del Valle v. Empire Home Health Care, Inc.*, 2021 WL 5534703, 2021 U.S. Dist. LEXIS 153355, *1 (E.D. Pa. Aug. 3, 2021); *In re Wawa Inc. Data Security Litig.*, 2021 WL 3276148, 2021 U.S. Dist. LEXIS 142025, *33-34 (E.D. Pa. July 30, 2021); *Hall v. Accolade, Inc.*, 2019 WL 3996621, 2019 U.S. Dist. LEXIS 143542, *4-5 (E.D. Pa. Aug. 23, 2019).

## 1.    At the final approval stage, the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)."

With the above in mind, we turn to the first half of the preliminary approval inquiry: whether, at the final approval stage, the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B)(i).  As discussed below, each Rule 23(e)(2) factor is likely to be satisfied at the final

11

approval stage:

> **Rule 23(e)(2)(A) – Whether Plaintiff and class counsel "have adequately represented the class":**  This factor focuses "on the actual performance of counsel acting on behalf of the class."  *Hall*, 2019 U.S. Dist. LEXIS 143542, at *8-9 (internal quotations omitted); *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) (class counsel should "develop[] enough information about the case to appreciate sufficiently the value of the claims").  Here, this factor is likely to be satisfied at the final approval stage because, prior to settlement, the Parties engaged in robust discovery that included the production and analysis of extensive payroll, timekeeping, badge-swipe data, and other discovery relevant to the claims and potential damages.

> **Rule 23(e)(2)(B) – Whether the settlement "was negotiated at arm's length":**  This factor is likely to be satisfied at the final approval stage because negotiations were at arms-length.  *See* Section I.C, *supra*.

> **Rule 23(e)(2)(C)(i) – Whether the relief "is adequate, taking into account the costs, risks, and delay of trial and appeal":**  This factor "balances the relief that the settlement is expected to provide to class members against the cost and risk involved in pursuing a litigated outcome."  *Hall*, 2019 U.S. Dist. LEXIS 143542, at *10 (internal quotation omitted).  Such analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement

12

figure." *Id.* (internal quotation omitted).  As the Third Circuit has observed, "[t]he role of a district court is not to determine whether the settlement is the fairest possible resolution – a task particularly ill-advised given that the likelihood of success at trial . . . can only be estimated imperfectly." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013).

This factor is likely to be satisfied at the final approval stage.  With respect to the "**costs**" and "**delays**" associated with continued litigation, the Parties would be required to brief class certification in an adversarial context and at least one summary judgment motion.  If the lawsuit proceeded to trial as a class action, the Parties would almost certainly disagree regarding the propriety and scope of "representative" evidence in this action.  Moreover, quantifying damages would entail expert testimony and almost certainly require the Court to resolve contested *Daubert* motions.

In sum, while class counsel feels confident that this action could be successfully litigated on a class-wide basis, they cannot ignore the roadblocks that would be erected by Wegmans and its able counsel in the absence of settlement. The settlement achieves an excellent result when viewed against such risks. Specifically, the settlement entitles class members to an average pre-tax payment of approximately $182.  *See* p. 7 *supra*.  This compares very favorably to Plaintiff's counsel's analysis (based on the applicable data) of the maximum

amount class members might stand to recover.  *See* pp. 4-5 *supra*.

***Rule 23(e)(2)(C)(ii) – Effectiveness of the "proposed method of distributing relief" and "the method of processing class-member claims"*:**  This factor is likely to be satisfied at the final approval stage because class members are not required to file claim forms in order to receive payments and the notice form clearly describes the process for class members to object to or exclude themselves from the settlement.  *See Hall*, 2019 U.S. Dist. LEXIS 143542, at *11-12.

***Rule 23(e)(2)(C)(iii) – The terms and timing of any proposed attorney's fee award:***  This factor is likely to be satisfied at the final approval stage because Plaintiff's lawyers' request for fees and litigation expenses totaling 33.33% of the settlement fund, including settlement administration costs, is consistent with the fees/expenses commonly approved by this Court in other wage-rights class action settlements.  *See*, *e.g.*, *Myers v. Jani-King of Philadelphia, Inc.*, 2019 WL 4034736, 2019 U.S. Dist. LEXIS 144929, *29 (E.D. Pa. Aug. 26, 2019) ("requested fee of one-third (1/3) of the settlement fund is reasonable in comparison to awards in other cases"); *Galt v. Eagleville Hospital*, 310 F. Supp. 3d 483, 497 (E.D. Pa. 2018) (characterizing 35% fee as "within the range of fee awards accepted by courts in the past"); *Altnor v. Preferred Freezer Services, Inc.* 197 F. Supp. 3d 746, 768-69 (E.D. Pa. 2016) (characterizing 33% fee recovery as "benchmark").  As such, the requested fees/expenses are not an impediment to

14

*preliminary* approval, with the understanding that the requested fees/expenses will be carefully scrutinized pursuant to the Third Circuit's *Gunter* factors at the final approval stage. *See Del Valle*, 2021 U.S. Dist. LEXIS 153355, at *2 n.1 (review of attorney's fees deferred until final approval where fee request "not clearly excessive or unreasonable"); *accord Flores v. Eagle Diner Corp.*, 2019 WL 394335, 2019 U.S. Dist. LEXIS 141743, *21 (E.D. Pa. Aug. 21, 2019); *Hall*, 2019 U.S. Dist. LEXIS 143542, at *12.[13]

**Rule 23(e)(2)(C)(iv) – *Any agreement required to be identified under Rule 23(e)(3)***: Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal." Here, no such agreements exist.

**Rule 23(e)(2)(D) – *Whether the settlement treats class members equitably relative to each other***: This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others." *Fed. R. Civ. P. 23, Advisory Committee*

---

[13] Similarly, courts generally defer any assessments of requested service award until the final approval stage. *See, e.g.*, *Hall*, 2020 U.S. Dist. LEXIS 52632, at *25-33. Such an approach is warranted where, as here, the requested $10,000 service award compares favorably to awards approved in other class action settlements resolving wage rights lawsuits. *See, e.g.*, *Roxberry v. Snyders-Lance, Inc.*, 2017 U.S. Dist. LEXIS 193573, *5-6 (M.D. Pa. Nov. 15, 2017) ($19,000); *In re Janney Montgomery Scott LLC Financial Consultant Litig.*, 2009 U.S. Dist. LEXIS 60790, *36 (E.D. Pa. July 16, 2009) ($20,000). As Judge Robreno has observed, service awards have been approved in the "general range" of 3% of the total settlement fund. *Devine*, 2021 WL 4803819, 2021 U.S. Dist. LEXIS 197924, *24-25 (citing cases). Here, Loeper's requested $10,000 award falls below three percent of the settlement fund.

*Notes to December 1, 2018 Amendments*.  This factor is likely to be satisfied at the final approval stage because the allocation methodology contemplated in the Agreement each class member's settlement payment is directly proportional to the overtime-eligible weeks during which he/she was allegedly harmed by Wegmans's challenged pay practice and is the result of careful analysis by Plaintiff's lawyers and their retained expert and is based upon objectively ascertainable data.  *See* supra pp. 4-5.

In sum, at the final approval stage, the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B)(i).

### 2.    At the final approval stage, the Court "will likely be able to . . . certify the class for purposes of judgment on the proposal."

Having determined that the Parties "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we turn to the second half of the preliminary approval inquiry: whether, at the final approval stage, the Court "will likely be able to . . . certify the class."  Fed. R. Civ. P. 23(e)(1)(B)(ii).  Here, Plaintiff seeks, for the sole purpose of settlement, a class comprised of 1,228 hourly Wegmans employees who were credited with working over 40 hours at Defendant's Pottsville, PA Retail Service Center ("RSC") (not including leave, vacation, or holiday time) during the following time periods: (i) 12/22/19 until 4/20/20; (ii) 7/4//21 until 12/18/21; and (iii) 2/13/22 until 10/15/23."  *See* ECF No. 31-1 at pp.

1-2 (Defining "Class Members" and "Eligible Weeks").

To obtain class certification, Plaintiff must satisfy Rule 23(a)'s four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015). Next, he must satisfy Rule 23(b)(3)'s two additional requirements: (5) common questions of law or fact must "predominate over any questions affecting only individual members" and (6) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

As discussed below, and for settlement purposes only, Plaintiff is likely to satisfy the six Rule 23 requirements at the final approval stage:

***Numerosity***: Rule 23(a)(1)'s numerosity requirement surely will be satisfied because the settlement class numbers 1,228 individuals.

***Commonality/Predominance***: The commonality "bar is not a high one," *Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3d Cir. 2013), and "is easily met," *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Commonality "does not require perfect identity of questions of law or fact among all class members." *Reyes*, 802 F.3d at 486. Since "'even a single common question will do,'" *id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)), commonality is satisfied if "'plaintiffs share at least one question of fact or law with the grievances of the prospective class,'" *id.* (quoting *Rodriguez*, 726 F.3d at

382).

Meanwhile, Rule 23(b)(3)'s predominance inquiry (which is often undertaken alongside the commonality inquiry) asks "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation and citation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (internal quotation and citation omitted).

Importantly, courts have found commonality (and predominance) in lawsuits brought by employees seeking compensation for time attributable to pre-shift and post-shift activities.  Most notably, in *Bouaphakeo*, the Supreme Court upheld the certification of a class of food processing workers who sought compensation under both the FLSA and state law for "time spent donning and doffing required protective gear" at the beginning and end of the workday.  *See generally* 577 U.S. at 452-62.  The Court explained that common issues concerning the legal compensability of such time predominated over individualized issues pertaining to each class member's experience in the plant.  *See id.* at 453-54.

18

In other PMWA class action lawsuits seeming walking time damages for Pennsylvania warehouse workers, district courts have applied *Bouaphakeo* to grant class certification. In *Davis v. Target Corporation*, 2023 U.S. Dist. LEXIS 214818 (E.D. Pa. Dec. 1, 2023), the court certified a class of warehouse workers advancing a nearly identical claim under the PMWA as the one Plaintiff pursues here: payment for pre- and post- shift walking time between the building's entrance and time clocks. *See id.* at *2-4. Analyzing *Bouaphakeo*, the court concluded that the central question of whether the relevant time is categorically compensable predominates over individual differences in liability or damages." *Id.* at *15.

Likewise, in *Smith v. Strom Engineering Corp.*, 2022 U.S. Dist. LEXIS 84837 (W.D. Pa. May 10, 2022), the court certified a class of workers seeking to be paid for pre-shift travel time under the PMWA. The court explained that common legal issues surrounding the travel time's compensability predominated over any "individualized" issues. *See id.* at *12-15, 19-24.

Here, as in *Bouaphakeo, Davis, and Smith*, the legal compensability of *intra*-warehouse walking time under the PMWA is a threshold legal issue that is common to every class member and predominates over other issues.

**Typicality:** Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Generally speaking, lawsuits challenging the same conduct which "affects both the named

plaintiffs and the putative class usually satisfy the typicality requirement

irrespective of the varying fact patterns underlying the individual claims." *Baby*

*Neal*, 43 F.3d at 58; *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001).

"[E]ven relatively pronounced factual differences will generally not preclude a

finding of typicality where there is a strong similarity of legal theories." *Baby*

*Neal*, 43 F.3d at 58; *accord Stewart*, 275 F.3d at 227-28.  Here, typicality exists

because Plaintiff's central legal theory (that walking time constitutes "hours

worked" under the PMWA) is entirely aligned with those of the settlement class

members' interests.  Moreover, in attempting to quantify the uncompensated time,

Plaintiff relies on the same electronic payroll and other data that would be relied

upon by other class members.  Simply put, the claims and defenses underlying

Plaintiff's individual PMWA claim are generally the same as the claims and

defenses underlying the claims of the absent class members.

   *Adequacy*:  This requirement is satisfied if both: "(a) the plaintiff's attorney

[is] qualified, experienced, and generally able to conduct the proposed litigation,

and (b) the Plaintiff [does] not have interests antagonistic to those of the class,"

*Weiss v. York Hospital*, 745 F.2d 786, 811 (3d Cir. 1984) (internal quotations

omitted).  Here, these requirements are satisfied.  Class counsel are experienced

20

employment rights lawyers,[14] and Plaintiff's pursuit of this lawsuit demonstrates a genuine commitment to the settlement class members' interests.

*Superiority*:    Rule 23(b)(3) also requires the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication," *In re Prudential Insurance Co. America Sales Practice Litig.*, 148 F.3d 283, 316 (3d Cir. 1998), and "sets out several factors relevant to the superiority inquiry," *id.* at 315-16.  As discussed below, Plaintiff contends these factors are likely to favor class certification:

First, Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions."  This requirement might prevent certification where class members' individual claims are "emotionally charged or involve significant damages amounts."  *See* William Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg on Class Actions* at §4:69.  Here, however, Plaintiff's lawyers have estimated that class member's alleged unpaid overtime wage are relatively minor.  *See* page 7 *supra*.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. This factor is not relevant because no related litigation exists.

---

[14]    *See generally* Declaration of Deirdre Aaron (ECF No. 32-2); Declaration of Sarah Schalman-Bergen (ECF No. 32-3).

Third, Rule 23(b)(3)(C) requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum." Here, concentration of all claims in this Court makes good sense since the class members worked in the same facility in Pennsylvania.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(D). This requirement is automatically satisfied when a case is certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In sum, at the final approval stage, the Court "will likely be able to . . . certify the class." Fed. R. Civ. P. 23(e)(1)(B)(ii).

### B.    The Notice Form and Protocols Warrant Approval.

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Any notice form distributed to the class must convey "clearly and concisely . . . in plain, easily understood language" the following information: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding

22

effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Here, the above notice requirements are satisfied. As noted earlier, the Agreement requires the Administrator to mail to each class member a detailed notice form. *See* ECF No. 31-1 at ¶ 7. These forms will be mailed to the class members' best and last known addresses provided by Wegmans. *See id.* Before mailing, the Administrator will check all addresses against the National Change of Address Database. *See id.* Thereafter, the Administrator will follow strict protocols in updating the addresses of any class members whose notice forms are returned as undeliverable. *See id.* Rule 23 expressly contemplates such notice-by-mail protocols. *See* Fed. R. Civ. P. 23(c)(2)(B).

Moreover, the proposed notice form is clearly written and satisfies each of Rule 23(c)(2)(B)'s content requirements. *See* ECF No. 31-1 at Ex. A (Notice).

## C. Winebrake & Santillo, LLC and Lichten & Liss-Riordan P.C. Should Be Appointed Interim Class Counsel.

Where, as here, a class action lawsuit is settled prior to class certification, the Court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." *See* Fed. R. Civ. P. 23(g)(3). Then, at the final approval stage, these lawyers can seek to be appointed class counsel in conjunction with the certification of the settlement class. *See id.* at 23(g)(1). Here, W&S and LLR seeks appointment as interim class

counsel.  Each firm has extensive experience litigating wage and hour claims on a class action basis, *see* Aaron Decl. at ¶¶ 5-9; Schalman-Bergen Decl. at ¶¶ 11-15, and has diligently litigated this matter.

   **WHEREFORE**, Plaintiff respectfully asks the Court grant this motion and enter the accompanying proposed order.

Date:  January 30, 2024                      Respectfully,


                                    _____*/s/ Deirdre Aaron*_____
                                    Peter Winebrake
                                    Deirdre Aaron
                                    Winebrake & Santillo, LLC
                                    715 Twining Road, Suite 211
                                    Dresher, PA 19025
                                    (215) 884-2491

                                    Sarah Schalman-Bergen
                                    Krysten Connon
                                    Lichten & Liss-Riordan, P.C.
                                    729 Boylston Street, Suite 2000
                                    Boston, MA  02116
                                    (617) 994-5800

                                    *Plaintiff's Counsel*